IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN C. BALDWIN, | |
| Plaintiff, | 8:22CV87 |
| vs. | |
| UNION PACIFIC RAILROAD CO., | MEMORANDUM AND ORDER |
| Defendant. | |

This matter comes before the Court on the parties' respective motions in limine. Filing No. 120 (Plaintiff's motion in limine); Filing No. 123 (Defendant's motion in limine); Filing No. 132 (Plaintiff's supplemental motion in limine). The motions are granted in part and denied in part as set forth in greater detail herein.

I.  BACKGROUND[1]

Plaintiff, John C. Baldwin, brings suit against his employer, Defendant, Union Pacific Railroad Co., alleging it discriminated against him based on his disability. He alleges disparate treatment and failure to accommodate under the Americans with Disability Act ("ADA"). Filing No. 126 at 3. Union Pacific asserts defenses of direct threat, business necessity, and good faith. Id. The case is set for trial on November 13, 2023.

Baldwin has filed nine motions in limine. See Filing No. 120; Filing No. 132. Union Pacific has filed thirteen. Filing No. 123. The Court will address the parties' arguments in turn.

---

[1] A more extensive background can be found in the Court's ruling on summary judgment, Filing No. 119.

1

## II. ANALYSIS

### A. Standard of Review

Although the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings, performing a gatekeeping function and sharpening the focus for later trial proceedings, some evidentiary submissions cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment. *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine is appropriate for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Id.* In other instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury. *Id.*

Courts are guided by Federal Rules of Evidence 401 and 403 in resolving these motions. A court must evaluate whether the proposed evidence is relevant in that it has "any tendency to make a fact more or less probable than it would be without the evidence" and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if the evidence is relevant, a court may preclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403

### B. Baldwin's Request to Sequester Witnesses

Baldwin moves to sequester the witnesses at trial. Filing No. 121 at 6. Union Pacific does not oppose this request. Filing No. 139 at 1. "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. Accordingly, the Court grants Baldwin's motion to sequester. Baldwin,

as the plaintiff, and Union Pacific's corporate representative, are excluded from the sequestration order.

### C. Baldwin's Request to Exclude or Limit Train-Accident Testimony

Baldwin asks the Court to exclude evidence regarding any train accidents. Filing No. 121 at 6. He argues that in previous cases, Union Pacific has attempted to introduce evidence of train accidents in Oklahoma and Nevada, presumably relating to safety issues, but that such evidence is irrelevant and unfairly prejudicial. Union Pacific states it does not intend to affirmatively introduce evidence of any past train accidents in this case. Filing No. 139 at 1–2. However, it cautions that if Baldwin introduces evidence that makes train accident evidence necessary, it may wish to introduce such evidence in rebuttal. The Court thus grants Baldwin's motion to preclude Union Pacific from introducing evidence of train accidents in its case in chief. Should Union Pacific decide it needs to introduce such evidence in rebuttal, it should bring the issue to the Court's attention, out of earshot of the jury, so that the Court can decide any relevance and 403 objections to the specific evidence that is proposed at that time.

### D. To Exclude or Limit Evidence About Baldwin's Application for Railroad Retirement Board Benefits

Baldwin initially asks the Court to exclude evidence that he applied for and received Railroad Retirement Board ("RRB") benefits. Filing No. 121 at 8. However, in his reply brief, he withdraws his objection to Defendant's RRB-related exhibits and instead proposes a limiting jury instruction. The Court will accordingly consider giving such a limiting instruction and will solicit the parties' input at the instructions conference. However, Plaintiff still objects to Union Pacific intending to introduce Dr. Heather Phipps's report into evidence.

Dr. Phipps is a medical partner to Baldwin's treating orthopedic surgeon, Dr. David Fischer, and she evaluated Baldwin in conjunction with his RRB application in May 2018. Neither party proposes calling Dr. Phipps at trial, and the parties expect to have Dr. Fischer's designated deposition testimony serve as his trial testimony.  During his deposition, Dr. Fischer indicated he had not seen Dr. Phipps's report before and did not know how or when it was created.  See Filing No. 158-1.  Union Pacific contends Dr. Phipps's report should be admissible as a business-records exception to hearsay, but it does not appear any witness is able to lay foundation to support that contention. Accordingly, while the parties will be permitted to discuss RRB benefits as they are relevant to Baldwin's entitlement to back pay, Dr. Phipps's report is not admissible.

### E.  The Parties' Conflicting Requests Regarding In-Person Medical Exams

Both parties file motions in limine regarding the necessity of an in-person medical exam for fitness-for-duty purposes under the ADA.

The ADA prohibits an employer from requiring a medical examination or inquiring into the disability status of an employee "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). However, "[a] covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B); accord Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) ("[C]ourts will readily find a business necessity if an employer can demonstrate . . . a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties . . . ." (quoting Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 98 (2d Cir. 2003))).  A fitness-for-duty evaluation falls into this category.

4

Similarly, the ADA permits employers to "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." See 42 U.S.C. § 12113(b). "Direct threat" means "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). A determination that an individual poses a direct threat requires an "individualized assessment of the individual's present ability to safely perform the essential functions of the job" and this assessment must also "be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." Id.

Union Pacific asks the Court to prevent Baldwin from referencing the fact it did not conduct an in-person medical examination in making its fitness-for-duty determination. Filing No. 124 at 8–9. Baldwin, in turn, asks the Court to "prohibit Union Pacific from arguing it was *not* required to conduct an in-person examination." Filing No. 121 at 13 (emphasis added). Both parties stretch the statutory and regulatory language too far. While Union Pacific is correct that an in-person exam is not mandatory, whether or not Union Pacific physicians personally examined Baldwin may be relevant to whether the fitness-for-duty process was sufficiently "individualized," see 29 C.F.R. § 1630.2(r), and thus, the Court will not prohibit Baldwin from referencing the lack of an in-person evaluation. Baldwin, however, also misstates the law. Union Pacific is not required to conduct an in-person examination and thus there is no basis to prohibit it from stating so.

Accordingly, both parties' motions in limine on this subject are denied. The Court will instruct the jury on the law as set forth above and the parties will not be permitted to argue to the contrary.

### F. Baldwin's Request to Limit "Same Decision" and Facility-Closure Evidence

Baldwin asks the Court to exclude from trial any evidence that Union Pacific claims it would have made the same decision to terminate Baldwin for another, unrelated reason, or that he would have lost his job due to the closure of the Hinkle locomotive facility in which he worked. Filing No. 121 at 15–16. He argues Union pacific did not include any such defense in the pretrial order. Union Pacific agrees not to assert a same-decision defense but argues that subsequent layoffs at the Hinkle facility are relevant to Baldwin's claim for damages. Filing No. 139 at 15. The Court agrees. Accordingly, Baldwin's motion is granted as to "same decision" evidence but denied as to evidence of closure or layoffs at the Hinkle facility.

### G. Baldwin's Request to Exclude Reference to His Prior Behavioral Incidents

Baldwin asks the Court to exclude any evidence or testimony relating to alleged prior "behavioral incidents" described by Baldwin's supervisor, Russell Lowe, in his written fitness-for-duty referral form. Filing No. 121 at 17–18. He argues such evidence is inadmissible hearsay and irrelevant. Union Pacific does not oppose this motion in limine and agrees that the reference to the behavioral incidents can be redacted from the fitness-for-duty referral form if and when it is offered as an exhibit at trial. Filing No. 139 at 16–17. Accordingly, this request is granted.

### H. Baldwin's Request to Prohibit Legally Inconsistent Arguments

Baldwin asks the Court to prohibit Union Pacific from asserting arguments that are legally inconsistent with the Court's prior rulings. Specifically, he refers to the Court allowing his cause of action for disparate treatment via a theory of unlawful screening to survive summary judgment. He argues Union Pacific should not now be permitted to contend this cause of action is not legally cognizable.

The ADA prohibits employers from "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities." 42 U.S.C. § 12112(b)(6). Although these "screening" claims are commonly presented via a disparate-impact theory utilizing statistical data, there is no reason based on the statutory language that they cannot also be proceed under a disparate-treatment theory as well. *See, e.g.*, *E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 357 (3d Cir. 2012), as amended (Nov. 15, 2012) (noting "[t]ests of this type [under 12112(b)(6)] may be impermissible under both disparate treatment and disparate impact theories"). Accordingly, Baldwin will be permitted to proceed on this theory of the case. Union Pacific, in turn, is free to argue that the 10 Mets standard for exercise tolerances tests does not screen out or tend to screen out disabled individuals or that Baldwin's claim otherwise fails the statutory requirements.

I. **Baldwin's Request to Overrule Union Pacific's Objections to the Admissibility of Its Own Documents**

Baldwin asks the Court to rule that more than forty separate documents Union Pacific produced in discovery are admissible over its foundation and authenticity objections. Filing No. 121 at 19. In response, Union Pacific states its potential objections will be based on foundation only, not authenticity. Filing No. 139 at 19. The Court cannot assess foundation for a large group of exhibits without hearing the evidence as it will be adduced at trial. Accordingly, it denies Baldwin's request with the provision that the parties can make their arguments regarding foundation as to specific documents as the issue arises during trial. As a general rule, the Court will find that authenticated documents that are relevant are admissible.

**J. Union Pacific's Request to Exclude Evidence of the Grievance Proceedings**

Union Pacific asks the Court to exclude evidence of the grievance process Baldwin initiated through his union prior to commencing the present litigation. Filing No. 124 at 3. It argues such evidence is not relevant under Rules 401 through 403 or constitutes inadmissible hearsay under Rules 801 through 803.

The union grievance process is relevant in this case. Unlike other cases in which the grievance process may have occurred after and apart from the alleged discrimination, here it is an integral part of the story. Specifically, after finding the fitness-for-duty evaluation insufficient, the Public Law Board award required Union Pacific to obtain another medical evaluation of Baldwin at which time it sent him to Dr. Harris. Both parties discuss Dr. Harris's findings, and his determinations will be of key importance to the jury in its fact-finding. In particular, Union Pacific relied on Dr. Harris's report in reaffirming Baldwin's work restrictions. To exclude how and why Dr. Harris came to evaluate Baldwin would be to omit a significant piece of the timeline and story. Thus, the Court finds such evidence is relevant.

As to Union Pacific's hearsay objections, Baldwin indicates he intends to adduce this evidence largely for the purpose of showing why the Harris evaluation occurred, not for the truth of any of the Public Law Board's findings. While the Court finds this argument persuasive, it will defer ruling on any hearsay objections until they are presented at trial.

**K. Union Pacific's Request to Prohibit Evidence of Other ADA Suits**

Union Pacific seeks to exclude evidence of other ADA lawsuits against it, including Plaintiff's expert's, Dr. Trangle's, experience in other cases, arguing it is not relevant or likely to confuse and mislead the jury. Filing No. 124 at 11.

Evidence of other fitness for duty evaluation including the same set of medical policies, the same decision-makers, and similar impacts on other individuals with disabilities that shows a pattern or practice of activity is relevant to establish motive, intent and knowledge and is therefore admissible under Federal Rule of Evidence 404(b).  While the Court will not hold mini-trials on other lawsuits, it will allow evidence of closely related harms within the confines of Rule 404(b).

**L. Union Pacific's Request to Prohibit Baldwin from Raising Accommodations He Did Not Previously Identify**

Union Pacific argues Baldwin should be prohibited from raising new arguments about the available accommodations Union Pacific should have afforded him.  Filing No. 124 at 12.

The Court will not prevent Baldwin from presenting his accommodation claim as he sees fit and has already denied Union Pacific's motion for summary judgment on this claim.  See *Kowitz v. Trinity Health*, 839 F.3d 742, 748 (8th Cir. 2016) (employees are not required to "formally invoke the magic words 'reasonable accommodation'"); *Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629, 638–39 (7th Cir. 2020) ("A proposed accommodation is not limited to what the plaintiff introduced into the process[.]"); *see also Sanders v. Union Pac. R.R. Co.*, 2021 WL 4783629, at *9 (D. Neb. Oct. 7, 2021) (request for accommodation not required where "it would have been futile to ask"); *Sanders*, 2022 WL 125066, at *4 (denying motion in limine on the same topic).

To the extent Baldwin may attempt to present evidence not previously disclosed in discovery, Union Pacific believes it would have a strong basis to object.  At this point, however, Baldwin has not indicated an intent to do so, and the Court cannot speculate on evidence not before it.  Baldwin is permitted to argue his accommodations claim

9

consistent with the rules of evidence and civil procedure. Union Pacific can re-raise its objection should it believe Baldwin has strayed from these confines at trial.

### M. Union Pacific's Request to Exclude Baldwin's Subjective Beliefs About Discrimination

Union Pacific asks the Court to preclude Baldwin from testifying "about his subjective belief that Union Pacific discriminated against him based on his disability." Filing No. 124 at 15. Baldwin agrees and states he is not intending to so testify. Accordingly, the Court grants this request.

### N. Union Pacific's Request to Exclude Witnesses' Subjective Opinions

Union Pacific asks the Court to preclude any of Baldwin's witnesses from testifying as to their "subjective opinions" that he was unfairly terminated because of his disability. Baldwin argues there is potential opinion testimony that may be admissible without invading the province of the jury as Union Pacific fears. The Court cannot speculate on what the testimony may be at trial. It will, of course, follow the law, including Rules 701 through 703 regarding opinion testimony. Thus, Union Pacific's vague request is overruled without prejudice to reassertion at trial.

### O. Union Pacific's Request to Prohibit Testimony from Baldwin's Witnesses Regarding Its Motives or Intent

Union Pacific asks for an order prohibiting Baldwin's witnesses, including Dr. Trangle, from opining that its conduct was "punitive" or the result of "ill-will." While such testimony is generally inadmissible opinion testimony under Rules 701 and 702, the Court cannot rule on such an objection without the statement(s) at issue in front of it. Accordingly, it denies this motion in limine with the caveat that Union Pacific can raise any objections to opinion testimony at trial.

**P. Union Pacific's Request to Limit Testimony from Baldwin's Treating Physicians**

Union Pacific seeks to exclude any testimony from Dr. Fischer, Dr. Fulper, Dr. Ricketts, and Dr. Harris regarding "the reasonableness of Union Pacific's medical restrictions or FFD evaluation process" and whether Baldwin could perform his job duties. Filing No. 124 at 18. It argues such testimony would go beyond the information these treating physicians obtained during their care and treatment of Baldwin and would therefore have required them to submit an expert report under Federal Rule of Civil Procedure 26(a)(2)(B).

Generally, "a 'treating physician may testify about that which is related to and learned through actual treatment of the [patient], and which is based on his or her personal knowledge of the examination, diagnosis and treatment.'" *Poster v. Marriott Int'l, Inc.*, No. 8:04-cv-534, 2005 WL 8175919, at *1 (D. Neb. Oct. 25, 2005) (quoting *Starling v. Union Pac. R.R. Co.*, 203 F.R.D. 468, 477 (D. Kan. 2001)); *see also Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) (stating that "[a] treating physician, even when testifying as a lay witness, may state 'expert' facts to the jury in order to explain his testimony" (quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 701.08 (Joseph M. McLaughlin ed., 2d ed. 1999)). In addition, a lay witness may testify as to any opinion "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding . . . of a fact in issue." Fed. R. Evid. 701. Opinions offered by a lay witness doctor that are based on her experience as a physician are clearly helpful to an understanding of her decision making process in the situation. *Weese v. Schukman*, 98 F.3d 542, 550 (10th Cir. 1996).

The doctors Union Pacific references include those who conducted the initial fitness-for-duty evaluations of Baldwin at its own request. All of these physicians therefore treated Baldwin and assessed his ability to perform his job duties and the need, or lack thereof, for any job restrictions. Such testimony is fully within the scope of permissible treating-doctor testimony. Thus, the Court denies this motion in limine without prejudice to reassertion at trial if Baldwin attempts to elicit testimony that exceeds these bounds.

### Q. Union Pacific's Request to Exclude the Testimony of Larry Mann

Union Pacific asks the Court to exclude the testimony of Larry Mann, a member of the Railroad Safety Advisory Committee medical standards working group. Filing No. 124 at 19. It argues any testimony he might present about why there are no standard medical regulations in the railroad industry would be hearsay and irrelevant. Filing No. 124 at 20. Baldwin states he does not intend to call Mann unless "Union Pacific creates a need" for him to do so, in which case he would "introduce evidence consistent with the Federal Rules of Evidence." Filing No. 142 at 20. Accordingly, the Court grants this request. Should Baldwin find it necessary to offer Mann's testimony in response to evidence introduced by Union Pacific, Union Pacific can object to the specifics of his testimony at that time.

### R. Union Pacific's Request to Prohibit Undisclosed Expert Opinions

Union Pacific asks the Court to exclude any expert opinions or witnesses that were not timely disclosed in accordance with Fed. R. Civ. P. 26(a)(2). Filing No. 124 at 24–25. Baldwin states his witnesses "will testify consistently with their disclosed expert reports." Filing No. 142 at 20–21. Accordingly, the Court grants this portion of Union Pacific's motion in limine.

12

### S. Union Pacific's Request to Limit Damages

Union Pacific asks the Court to limit Baldwin's damages request because it claims he has not produced medical records showing his entitlement to back and front pay. Filing No. 124 at 27–29. Baldwin claims he has produced the requested documents, namely those from Dr. Fischer, his treating orthopedic surgeon, but that he has simply not been treated by Dr. Fischer since 2019 so there are no further records to produce. Filing No. 142 at 22.

Baldwin bears the burden of proving he is entitled to the damages he seeks, including that he was able to perform the essential functions of his job, with or without an accommodation, during the requested time periods. *See Higgins v. Union Pac. R.R. Co.*, 303 F. Supp. 3d 945, 957 (D. Neb. 2018); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 979 F. Supp. 2d 252, 262 (D. Conn. 2013) ("The remedy in a discriminatory discharge case…does not extend to granting back pay for a period when a plaintiff would have been unable, due to an intervening disability, to continue employment." (quoting *Thornley v. Penton Pub., Inc.*, 104 F.3d 26, 31 (2d Cir. 1997))).

If a party fails to produce or supplement discovery, including the request for production regarding medical records at issue here, Federal Rule of Civil Procedure 37(c) prohibits a party from using the excluded documents at trial.

Thus, Baldwin will bear the burden of proving his requests for damages for the time periods in question and will be constrained to utilizing properly disclosed evidence as required by the Federal Rules of Civil Procedure. Importantly, Union Pacific references medical documents from the relevant timeframe that it claims "call into serious question whether he can, in fact, prove he was capable of performing the essentials [sic] functions of his Union Pacific job for the entire period of his damages claim." Filing No. 124 at 28.

13

Thus, there does not appear to be a complete dearth of evidence such as would preclude Baldwin from seeking damages at all, but rather, a sound basis for both sides to argue the availability and amount of damages to the jury. Should Union Pacific believe Baldwin has violated the Rules of Civil Procedure, such as by introducing documents it believes he should have disclosed in discovery, it can make a proper motion at trial.

### T. Union Pacific's Request to Exclude Evidence of Pretrial Matters

Union Pacific seeks an order in limine preventing any reference or comment regarding "any pretrial motions, including, but not limited to, discovery motions, motions for summary judgment, and motions in limine" and any reference to the now-decertified class action case, *Harris v. Union Pacific*, 16cv381. Filing No. 124 at 30. Baldwin agrees regarding the pretrial motions and orders but maintains that the existence of the *Harris* class action and Baldwin's inclusion in the certified class may be relevant to his case. Filing No. 142 at 26. The Court cannot assess the relevance or admissibility of reference to the *Harris* class action on a speculative basis. However, as set forth above, evidence of other fitness for duty evaluation including the same set of medical policies, the same decision-makers, and similar impacts on other individuals with disabilities that shows a pattern or practice of activity is relevant to establish motive, intent and knowledge may be admissible under Federal Rule of Evidence 404(b). Accordingly, the Court will grant the motion as to pretrial motions and orders in this case but deny it as to the *Harris* class action. However, Union Pacific can re-raise its objection at trial if it believes Baldwin's use of the Harris class action goes beyond the permissible scope of Rule 404.

### U. Union Pacific's Request to Exclude Evidence of Discovery Disputes

Union Pacific asks the Court to preclude reference to any pretrial discovery disputes, objections to discovery, and assertions of privilege. Filing No. 124 at 31. Baldwin has no objection. Filing No. 142 at 26–27. Thus, the Court grants this request.

### V. Baldwin's Request to Exclude the Testimony of Bruce Thompson and Derek Spencer

Baldwin asks the Court to exclude the testimony of Bruce Thompson and Derek Spencer because Union Pacific did not disclose them as witnesses during discovery. Filing No. 133 at 1. Thompson and Spencer appear to be Baldwin's intermediate supervisors, under Russell Lowe who make the initial fitness-for-duty referral.

A party must disclose the name and contact information of potential witnesses without awaiting a discovery request. Fed. R. Civ. P. 26(a). A failure to comply with the disclosure rule warrants automatic exclusion of that person as a witness at trial. Fed. R. Civ. P. 37(c). However, the Court can excuse a failure to disclose a witness if such failure was "substantially justified or is harmless." Id.

Union Pacific admits it violated Rule 26 by failing to disclose Thompson and Spencer's identities during discovery. Filing No. 139 at 21. It therefore agrees not to call Thompson as a witness. However, it argues the failure should be excused as either justified or harmless because Spencer's identity (as Baldwin's immediate supervisor under Russell Lowe) was known to him, Spencer was repeatedly identified in discovery even though not formally disclosed, Spencer may have valuable first-hand testimony, and it has now made Spencer available for a late deposition. Filing No. 139 at 21–22; Filing No. 148-1 at 1. Baldwin indicates he "will inform the Court whether he is maintaining his objection" after the deposition. Filing No. 159 at 17. Accordingly, the motion is granted

as to Thompson and denied without prejudice as to Spencer. Baldwin may re-raise his objection to Spencer's testimony if he deems it appropriate after the deposition occurs.

### III. CONCLUSION

For the reasons set forth herein, the Court grants in part and denies in part each party's motions in limine.

IT IS ORDERED:

1. Plaintiff's motion in limine, Filing No. 120, is granted in part and denied in part as set forth in this order.

2. Defendant's motion in limine, Filing No. 123, is granted in part and denied in part as set forth in this order.

3. Plaintiff's supplemental motion in limine, Filing No. 132, is granted in part and denied in part as set forth in this order.

Dated this 9th day of November, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge